

**LAW OFFICES OF**
**ERIC FRANZ, P.L.L.C.**
www.efranzlaw.com

June 5, 2019

<u>By ECF</u>
The Honorable Gregory H. Woods
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re: *United States v. Alan Arias*, 18 CR 902 (GHW)**

Dear Judge Woods:

I represent Alan Arias ("Alan") as CJA counsel and submit this letter in connection with his sentencing, which is scheduled for June 20, 2019.

Alan is described as a "great father" who "always helped and never missed anything when it came" to caring for and attending to his young son, A.A.[1] *Ex. A at 001*.   Alan's parents were mere teenagers when he was born – his mother was only 15 years old at the time. Unfortunately, but understandably so, given their young age, they were unable to care for him and Alan was left to the care of his grandmother for the first 14 years of his life. It was only then that he came under his mother's care. It is Alan's greatest hope to be able to provide his own 4 year old son with the kind of family that he himself did not have, and break the cycle of absentee-parent that plagued his family.

Alan now comes before Your Honor following his guilty plea to a lesser included count under Count 1, Conspiracy to Distribute and Possess with Intent to Distribute Crack in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  Alan makes no excuses for his conduct and is confronted every morning with the crushing awareness of the gravity and consequences of his conduct; conduct for which he has accepted responsibility, pled guilty and stands ready to be sentenced.

---

[1]  Enclosed as Exhibit A is a collection of letters from Alan's family members, and they are bate stamped 001-006 for ease of reference.

**New York City (Mailing Address)**      **Long Island**
747 Third Ave. 20th Fl., New York, N.Y. 10017      220 Old Country Road, Mineola, N.Y. 11501
(212) 355-2200 (phone)   (212) 937-2217 (fax)      (516) 692-0109 (phone)  (212) 937-2217 (fax)

The Presentence Investigation Report ("PSR"), dated March 22, 2019, calculates Alan's Total Offense Level to be 21 and places him in Criminal History Category II. PSR ¶¶ 35; 41. Although the applicable advisory sentencing range is 41 months to 51 months incarceration, pursuant to U.S.S.G. §5G1.1(b), his guidelines are effectively 60 months due to the statutory five year mandatory minimum which applies to his offense of conviction. 21 U.S.C. §§ 846 and 841(b)(1)(B). PSR ¶ 79. We respectfully submit that a sentence of 60 months -- the statutory mandatory minimum – is sufficient, and not greater than necessary as an appropriate sentence. *See* 18 U.S.C. § 3553(a).

## ALAN'S PERSONAL HISTORY AND CHARACTERISTICS

Alan is a deeply loved son, father and brother who is comforted and supported by a whole host of family members who are ready to welcome him with open arms and support him following his eventual release from custody. Alan is not beyond redemption. At 25 years old, he is capable but more importantly, he is <u>committed</u> to make the change necessary to mend his life such that he can become a productive member of society.

**A.    Alan's Upbringing and Family**

Alan was born into a working-class immigrant Dominican family in the Bronx, in August of 1993. *PSR ¶ 47.* His parents were mere teenagers when he was born; his mother, Eva Taveras, was only 15 years old when she gave birth to Alan. *Id.* His father, Junior Arias, was only a few years older than his mother at the time. *Id.* Given his parents' youth and their inability to raise him, he was raised by his maternal grandmother, Margarita Rosario, who relied on public assistance and food stamps to survive. *PSR ¶ 49.* It is only when Alan turned 14 years old that he returned to live with his mother. *PSR ¶ 50.* Alan is the oldest child and he has two half-siblings on his mother's side, Yobelyn Carbajal, age 16, and A.C., age 11. *PSR ¶ 48.* He also has a newborn brother on his father's side named J.A.. *Id.*

Alan has had sporadic employment throughout his adulthood. *PSR ¶¶ 72-73.* His most consistent and fruitful period of employment came when he worked for his father doing construction, painting and related home repair. *Id. Ex. A at 003.* Alan's goal upon his release from jail is to cultivate the construction skills he learned under his father's tutelage and to find gainful employment.

**B.    Alan is a Committed and Loving Father**

Alan has a four-year old son, A.A. with his long-term ex-girlfriend, Brittney Soto. *PSR ¶ 51.* Alan made a commitment to breaking the family cycle of absentee parents and strives to be the kind of parent to his son that his own parents were unable to be for him.

Alan and Britney were together from 2010 until 2018 and she reports that he "was always present for their son (while at liberty)". *PSR ¶ 52.* Quite naturally, it has "been difficult for their son to understand [Alan's absence]" and both Brittney and A.A. have struggled mightily with Alan's current incarceration. *Id.* Although, Brittney and Alan are no longer romantically involved, she remains supportive of Alan and would very much like to see Alan return home. *Ex. A at 001.*

Indeed, in her letter to Your Honor, Brittney writes that her son will often call Alan hoping his dad will pick up, to no avail of course. *Id.* The obvious and abundant sadness in the image of a little child reaching out for his father in that fashion brings Alan to tears. Brittney is categorical "I'm hoping that Alan doesn't have to be away for long because my son would be very devastated ….. I hope and pray that Alan gets to be with our son [A.A.] very [s]oon." *Id.*

Alan's other family members reflect a similar collective love and fervent desire to see Alan out of jail. Alan's 11 year old half-brother deeply misses playing with his big brother stating "I have the best brother." *Ex. A at 002.* Alan's father, Rafael, proclaims that he is "proud of the person and father" that Alan has become. *Ex. A at 003.* His mother, Eva, concedes her son has made mistakes but that he is "funny, lovable, caring and also a great father to his 4 year old [A.A.]." *Ex. A at 004.* His cousin, Raiceli Ventura, describes Alan being "more a brother" to her in that he was always so helpful, thoughtful and available. *Ex. A at 005.* Finally, his little sister, Yobelyn, writes that Alan "has always been there for [her]" and she further echoes the love and kindness expressed by other family members. *Ex. A at 006.* His younger sister, Yobelyn Carbajal, describes her big brother Alan as "being the greatest brother and man" that she has known and that Alan "has always been there for [her]" providing comfort and support. *Ex. A at 006.* Indeed, the abundant love and support for Alan clearly mirrors the devotion and care that he has extended to his family; as his mother, Eva Taveras, most aptly said "My son helped everyone that needed him as much as he could." *Ex. A at 004.*

C.     **History of Substance Abuse**

Alan left high school during his junior year, began spending time "in the streets with friends" and started smoking marijuana. *PSR ¶ 50.* At the time, Alan was not attending school and drug abuse was his regretful means to cope with depression. This introduction to marijuana at such a tender age continued to plague Alan who reported daily marijuana usage almost every day since, with the exception of when he was in treatment. *PSR ¶ 62.* Alan never went back to high school and has struggled through a number of GED preparatory courses. *PSR ¶¶ 69-71.* In 2015, Alan began abusing Percocet and continued daily use up until the instant arrest in December 2018. *PSR ¶ 63.* The addiction eventually consumed him and spiraled out of control causing Alan to sell drugs to feed his habit. *Id.*

Alan has made two attempts to deal with his drug addiction. While under the supervision of U.S. Pretrial Services of the Southern District of New York in 2013, Alan was admitted to an outpatient drug treatment from May 2013 until January 2014. *PSR ¶ 64*. He regularly attended his counseling sessions and was described as being "open about his urges and adapting coping skills to manage his urges and emotions" – his success was reflected in his negative drug screens. *Id*. However, Alan ultimately relapsed and resumed his marijuana and Percocet use. *PSR ¶ 65*.

Then again, while under the supervision of the U.S. Probation Office for the Southern District of New York, Alan was referred to various substance abuse programs but unfortunately, with little success. *PSR ¶¶ 65-66*. In September 2016, and again in February 2017 Alan attempted treatment but he continued to struggle with his Percocet addiction and tested positive for opiates. *Id*. His sustained Percocet abuse proved much harder to overcome than his previous struggles with alcohol and marijuana.

Through this trial and error period of combatting his addiction, Alan learned a valuable lesson; he needs in-patient, focused treatment. Alan has been sober since his arrest in December 2018[2] for the instant offense and is committed to entering substance abuse treatment while he serves his sentence and thereafter. *PSR ¶ 67*. Notably, Alan's involvement in the instant criminal conduct coincided with his heaviest period of opiate abuse.

## ARGUMENT

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the Guideline range, as well as any basis to depart from that range. Indeed, the Guidelines range is "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Once the Court calculates the applicable Guidelines range, it must consider the seven factors that are set forth in 18 U.S.C § 3553(a).

We respectfully submit that a sentence of 60 months imprisonment followed by 4 years of supervised release is appropriate. Probation has indicated that there are no "additional factors which would warrant a sentence outside the advisory Guidelines range." *PSR ¶ 96*. In this regard, we submit that although Alan has pled guilty to and committed a serious offense, he has an abundance of compelling qualities that speak to his good character.

---

[2] Notably, Alan has not suffered any disciplinary infractions throughout his pre-trial detention. *PSR ¶6*.

Furthermore, Alan's particularly difficult early childhood, having been born when his 15 year old mother was herself a child, should be considered in determining the appropriate sentence. His mother was too young to care for him so he had to live with his grandmother. Although his grandmother endeavored to raise him the best way she could, he was unable to live with his mother until he was 14 years old. The resulting sadness and isolation contributed to his later substance abuse leading Alan to make a whole host of self-destructive and poor decisions in adulthood. Despite the difficulties he has faced in his young life and the profound mistakes he has made, embodied by the instant offense, Alan is hopeful about his future. He has embraced this moment, accepted responsibility for his conduct and views this as a transformative time for himself as he looks forward to a life of sobriety and to being an integral component in his son's life.

As a final thought, Alan's substance abuse has contributed to his poor decision making and he accepts that his marijuana and Percocet abuse was a terrible way to "treat" his depression. He can now see, in the light of sobriety that a sincere commitment to substance abuse treatment is required.

## **CONCLUSION**

We respectfully request Your Honor sentence Alan to the mandatory minimum term of 60 months imprisonment followed by four years of supervised release. Although, Alan has struggled with substance abuse and faced unquestionable difficulties in his young life, he has accepted responsibility for the instant offense without any qualifications. Alan's everlasting hope is that this painful experience will allow him to fully embrace sobriety and be a positive role model in the life of his young son.

Respectfully Submitted,

_____
ERIC FRANZ